UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RBW, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| | ) |
| CARL A. AWED, JR., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

1. This case is about a real estate investor who agreed to purchase a luxury condominium at RBW, LLC's ("RBW") Battery Wharf complex in Boston's North End, reaffirmed that agreement, and then refused to close six weeks later. On account of the investor's breach of the purchase and sale agreement, RBW seeks a declaratory judgment that it is entitled to retain the deposits and interest currently in escrow as liquidated damages.

## PARTIES

2. Plaintiff RBW, LLC is a limited liability company with one member, BIT Investment Forty-One, LLC, a Delaware entity. AFL-CIO Building Investment Trust (the "BIT"), a bank collective trust, organized in Maryland, is the sole member of BIT Investment Forty-One, LLC. PNC Bank, National Association, a nationally chartered bank organized under the laws of the United States with its principal place of business in Delaware, is the sole trustee of BIT.

3. Defendant Carl A. Awed, Jr. is an individual investor and President of Park Drive, Inc., a real estate partnership. On information and belief, Mr. Awed is a Massachusetts resident with a residential address at 219 Park Drive, Boston, MA 02215.

## JURISDICTION

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because it involves citizens of different states and the aggregate amount in controversy, exclusive of interest and costs, exceeds $75,000.

## FACTS

5. In 2004, RBW began marketing for sale luxury condominiums in a mixed-use development at Battery Wharf in the North End of Boston (the "Battery Wharf Project" or the "Project"). At that time, neither construction of the luxury condominiums nor the hotel and commercial units of the Project had been completed.

6. On December 17, 2004, Mr. Awed entered into a purchase and sale agreement with RBW to purchase a luxury condominium unit (Unit 4407) for $1,300,000. Exhibit 1 (the "Unit 4407 P&S"). The Unit 4407 P&S obligated Mr. Awed to pay into escrow three deposits over the course of 18 months: an initial deposit of five percent of the purchase price at the time of the signing of the Unit 4407 P&S; a second deposit of five percent due six months later; and a third deposit of ten percent due 12 months thereafter. *Id*. §§ 1, 3(b). The three deposits totaled $255,000. *Id*. Mr. Awed owed the balance of the purchase price at the closing. *Id*.

7. On April 6, 2005, Mr. Awed's brother, Mark Awed and his wife Kathleen Tamilio-Awed, also entered into a purchase and sale agreement with RBW to purchase an even more expensive luxury condominium unit (Unit 4309) for $1,550,000. Exhibit 2 (the "2005 Unit 4309 P&S"). The total of the three deposits owed by Mark Awed and Kathleen Tamilio-Awed under the Unit 4309 P&S was $305,000. *Id*. §§ 1, 3(b).

8. RBW and both Mr. Awed and Mark Awed subsequently entered into amendments to their respective purchase and sale agreements that extended the closing date and extended the date upon which the third deposit would be due to be paid to RBW.

9. On or about February 2008, Mr. Awed and his brother, Mark Awed, informed RBW that they would be unable to proceed to closing on both Unit 4407 and Unit 4309 reportedly due to family illness and financial issues.

10. At that time, Carl Awed had made two payments for the deposits owed on Unit 4407, which totaled $130,000 (10% of the purchase price). Mark Awed had made two payments for the deposits owed on Unit 4309, which totaled $155,000 (10% of the purchase price).

11. Although RBW retained the right under the purchase and sale agreements to retain the deposits paid on Units 4407 and 4309 as liquidated damages in the event the Aweds failed to close, *see* Unit 4407 P&S §§ 4, 18, RBW sought to accommodate the Aweds' situation. RBW agreed, therefore, to release them from the obligation to close on Unit 4407 on the condition that they agree jointly to close on Unit 4309, Mark Awed's purchased unit. RBW further agreed to reduce the owed third deposit on Unit 4309 from $155,000 to $130,000 and to apply the deposits already paid on Unit 4407 to satisfy that owed amount. A true and correct copy of this agreement dated April 1, 2008 is attached hereto as Exhibit 3.

12. As a result of the April 1, 2008 Agreement, RBW and the Aweds amended the 2005 Unit 4309 P&S to add Carl Awed as a buyer. A true and correct copy of this amendment to the 2005 Unit 4309 P&S is attached hereto as Exhibit 4.

13. Just four months later, on August 27, 2008, the parties entered into a further agreement whereby Mark Awed and his wife assigned all of its rights and obligations related to

the 2005 Unit 4309 P&S to Carl Awed. A true and correct copy of the assignment dated August 27, 2008 is attached hereto as Exhibit 5.

14. As part of the assignment, Carl Awed reaffirmed his commitment to close on Unit 4309 by executing a new purchase and sale agreement with RBW for the purchase of Unit 4309 dated August 29, 2008 (the "2008 Unit 4309 P&S"). The 2008 Unit 4309 P&S listed Carl Awed as the sole buyer and scheduled the closing on this unit for September 12, 2008, which was later extended by agreement until October 3, 2008. A true and correct copy of the 2008 Unit 4309 P&S and associated extension agreements are attached hereto as Exhibit 6. Due to Mr. Awed's execution of the new purchase and sale agreement on Unit 4309, the parties agreed to terminate the 2005 Unit 4309 P&S. A true and correct copy of the termination agreement of the 2005 Unit 4309 P&S is attached hereto as Exhibit 7.

15. However, one day before the scheduled closing and only six weeks after Mr. Awed reaffirmed his commitment to close on Unit 4309, Mr. Awed informed RBW that he refused to attend the closing. A true and correct copy of the letter from Mr. Awed dated October 2, 2008 is attached hereto as Exhibit 8.

16. In refusing to close, Mr. Awed blamed "delays in the construction of the project" despite the fact that the construction of his unit had been completed at the time he executed the 2008 Unit 4309 P&S.

17. Furthermore, in both that agreement and in the purchase and sale agreement related to Unit 4407, Mr. Awed specifically agreed that he "may not refuse to consummate Closing on account of construction work in progress or pending with respect to other units and/or the common areas and facilitates of the Residences Condominium, the Master Condominium or

the Commercial Condominium." Exhibit 6, 2008 Unit 4309 P&S § 7(b); Exhibit 1, Unit 4407 P&S § 7(d).

18. Mr. Awed also sought to justify his breach on his purported inability to obtain a mortgage sufficient to cover the remaining purchase price due to the "meltdown" of the "country's financial institutions," despite the lack of any mortgage contingency in the 2008 Unit 4309 P&S or any other provision that would allow Mr. Awed to avoid his obligation to close.

19. Mr. Awed also agreed that "neither [RBW] nor any agents, representatives, or employees of [RBW] have many any representations or warranties, direct or indirect, oral or written, express or implied, to [Mr. Awed] or any agents, representatives, or employees of [Mr. Awed] with respect to the condition of the Unit or the Project, their fitness for any particular purpose, or their compliance with any law, and [Mr. Awed] is not aware of and does not rely upon any such representations." Exhibit 6, 2008 Unit 4309 P&S § 9(d).

20. Mr. Awed further agreed that "[t]he terms of this Agreement, together with the Condominium Presentation, constitute the entire agreement between the parties hereto and no statements made whether orally or in writing, by anyone with regard to the transaction which is the subject of this Agreement shall be construed as part thereof unless the same be incorporated herein by writing and signed by Seller and Buyer. Buyer has relied only upon the warranties and representations set forth in this Agreement, if any, and Buyer hereby waives, to the extent permissible by law any and all implied warranties. No oral warranties, representations or statements shall be considered a party hereof." Exhibit 6, 2008 Unit 4309 P&S § 20.

21. Mr. Awed's refusal to close on Unit 4309 thus constituted a material breach of the 2008 Unit 4309 P&S.

22.     In the event of such a breach, the 2008 Unit 4309 P&S provides that "the Deposits shall be paid to [RBW] and retained as complete and final liquidated damages and neither party shall have any further recourse to the other." Exhibit 6, 2008 Unit 4309 P&S § 17. RBW is also entitled to any accrued interest on those deposits. *Id*. § 3(c).

23.     This same liquidated damages provision – and RBW's right to retain the paid deposits based on an investor's refusal to close on a unit at Battery Wharf – has been upheld by the United States District Court for the District of Massachusetts and the United States Court of Appeal for the First Circuit. *See Edlow v. RBW, LLC*, 688 F.3d 26 (1st Cir. 2012); *Edlow v. RBW, LLC*, 09-cv-12133-RGS, 2010 WL 2034772 (D. Mass. May 21, 2010).

24.     Based on his clear breach of the 2008 Unit 4309 P&S by refusing to close, RBW sent a letter to the Escrow Agent on February 6, 2013, seeking the disbursement of the deposits and any accrued interest as liquidated damages.

25.     On that same day, RBW provided notice to Mr. Awed of RBW's instructions to the Escrow Agent to disburse these funds through a letter to Mr. Awed's counsel.

26.     Despite his clear breach of the 2008 Unit 4309 P&S by refusing to close, Mr. Awed has objected to the Escrow Agent's release of the deposits and accrued interest to RBW.

27.     On February 21, 2013, Mr. Awed's counsel wrote to the Escrow Agent to object to the disbursement of the funds.

28.     Based on the objection interposed by Mr. Awed's counsel, the Escrow Agent has taken the position that no release of the escrowed deposits may be made to RBW absent an order from a court of competent jurisdiction.

29.     RBW thus has no other option than to seek a declaratory judgment to that effect from this Court.

## COUNT I
### (Breach of Contract)

30. RBW repeats and incorporates herein by reference the allegations set forth in each of the foregoing paragraphs.

31. Mr. Awed and RBW are parties to the 2008 Unit 4309 P&S.

32. At all times, RBW has performed its obligations under the terms of the 2008 Unit 4309 P&S.

33. Mr. Awed materially breached the terms and provisions of the 2008 Unit 4309 P&S by refusing to close on the unit at the scheduled closing date, refusing to pay the remaining balance of the owed purchase price, and refusing to consent to the escrow agent's release to RBW of the deposits paid and accrued interest for Unit 4309.

34. According to the 2008 Unit 4309 P&S, Mr. Awed's material breaches of the contract entitle RBW to retain the deposits and any accrued interest as liquidated damages.

35. As a result, RBW has been damaged in the amount of the deposits, $285,000, plus any accrued interest.

## COUNT II
### (Declaratory Judgment)

36. RBW repeats and incorporates herein by reference the allegations set forth in each of the foregoing paragraphs.

37. An actual and present controversy exists between RBW and Mr. Awed relating to RBW's right to retain the deposits paid and interest accrued for Unit 4309 as liquidated damages based on Mr. Awed's breaches of the 2008 Unit 4309 P&S.

38. The 2008 Unit 4309 P&S obligated Mr. Awed to close on Unit 4309 and pay the remaining balance of the purchase price on October 3, 2008.

39. Mr. Awed refused to close on Unit 4309 and refused to pay the remaining balance of the purchase price.

40. In the event of such breaches of the contract, the 2008 Unit 4309 P&S entitles RBW to retain the paid deposits and any interested accrued therefrom as liquidated damages.

41. RBW thus requests a declaration that it is entitled to retain and that the escrow agent may release to RBW the total of the deposits paid by Mr. Awed on Unit 4309 in the amount of $285,000, plus any accrued interest.

## PRAYER FOR RELIEF

WHEREFORE, RBW respectfully requests that this Court:

(a) enter judgment for RBW on Count I and award the liquidated damages currently held in escrow arising out of Mr. Awed's material breaches of the 2008 Unit 4309 P&S;

(b) enter judgment for RBW on Count II declaring that RBW is entitled to retain the deposits currently being held in escrow related to Unit 4309 and any accrued interest as liquidated damages arising out of Mr. Awed's material breaches of the 2008 Unit 4309 P&S; and

(c) grant such other and further relief as the Court may deem just and proper.

**RBW demands trial by jury on all counts so triable.**


Dated: August 19, 2013

          RBW, LLC

          By its attorneys,

          _/s/ Richard D. Batchelder, Jr._____
          Richard D. Batchelder, Jr. (BBO# 556653)
          William J. Dunn (BBO# 666465)
          ROPES & GRAY LLP
          Prudential Tower
          800 Boylston Street

Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
richard.batchelder@ropesgray.com
william.dunn@ropesgray.com